GRANT P. FONDO (SBN 181530)
*GFondo@goodwinlaw.com*
**GOODWIN PROCTER LLP**
601 Marshall Street
Redwood City, CA  94063
Tel.: +1 650 752 3100
Fax: +1 650 853 1038

AMANDA H. RUSSO (SBN 319617)
*ARusso@goodwinlaw.com*
**GOODWIN PROCTER LLP**
601 S. Figueroa Street, 41st Floor
Los Angeles, CA  90017
Tel.: +1 213 426 2500
Fax: +1 213 623 1673

Attorneys for Respondent
PAYWARD VENTURES, INC., d/b/a
KRAKEN OR KRAKEN.COM

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>PAYWARD VENTURES INC., d/b/a<br>KRAKEN OR KRAKEN.COM, OR ITS<br>PREDECESSORS, SUBSIDIARIES,<br>DIVISIONS, OR AFFILIATES,<br><br>    Respondent. | Case No. 3:23-MC-80029-JCS<br><br>**RESPONDENT PAYWARD VENTURES, INC.'S ADMINISTRATIVE MOTION TO FILE UNDER SEAL PORTIONS OF ITS OPPOSITION TO PETITION TO ENFORCE INTERNAL REVENUE SERVICE SUMMONS AND SUPPORTING DECLARATION**<br><br>Date:         May 19, 2023<br>Time:        9:30 a.m.<br>Courtroom: F (15th Floor)<br>Judge:      Hon. Joseph C. Spero |

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Civil Local Rules 7-11 and 79-5, Payward Ventures, Inc. ("Kraken") hereby moves to file under seal certain portions of its Opposition to Petition to Enforce Internal Revenue Summons ("Opposition") (ECF No. 16) and the Declaration of Todd Siemers in Support of that Opposition (ECF No. 16-4) that describe confidential commercial information regarding Kraken's business operations.  The parties are meeting and conferring as to the proposed redactions.  It is currently anticipated that Kraken will supersede with a less redacted Opposition, well prior to the parties' May 19, 2023 hearing on the Petition to Enforce.

## LEGAL STANDARD

Civil Local Rule 79-5(c)(1) requires a party seeking to file documents under seal to submit "a specific statement of the applicable legal standard and the reasons for keeping a document under seal, including an explanation of: (i) the legitimate private or public interests that warrant sealing; (ii) the injury that will result if sealing is denied; and (iii) why a less restrictive alternative to sealing is not sufficient."

A party seeking to keep judicial records under seal must demonstrate "good cause" or "compelling reasons" for doing so.  *See Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178-1179 (9th Cir. 2006); *see also Pintos v. Pacific Creditors Ass'n*, 605 F.3d 665, 677-79 (9th Cir. 2010). "Under the 'compelling reasons' standard, a district court [] weigh[s] 'relevant factors,' [and] base[s] its decision on a 'compelling reason.'"  *Pintos*, 605 F.3d at 679 (quoting *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995)). "'Relevant factors' include the 'public interest in understanding the judicial process and whether disclosure of the material could result in improper use of the material for scandalous or libelous purposes or infringement upon trade secrets.'"  *Id.* at 679 n.6 (quoting *Hagestad*, 49 F.3d at 1434).

"Historically, courts have recognized a 'general right to inspect and copy public records and documents, including judicial records and documents."  *Kamakana*, 447 F.3d at 1178 (quoting *Nixon v. Warner Communs., Inc.*, 435 U.S. 589, 597 (1978)). "Nonetheless, access to judicial records is not absolute [and] [a] narrow range of documents is not subject to the right of public access at all because the records have 'traditionally been kept secret for important policy reasons.'"

1    *Id.* (citing *Times Mirror Co. v. U.S.*, 873 F.2d 1210, 1219 (9th Cir. 1989)). "[T]he common-law

2    right of inspection has bowed before the power of a court to insure that its records are not used [...]

3    as sources of business information that might harm a litigant's competitive standing[.]" *Nixon,* 435

4    U.S. at 598 (internal citations omitted).

5    <u>**ARGUMENT**</u>

6          Kraken's Administrative Motion to File Under Seal ("Motion") is supported under the

7    "good cause" and "compelling reasons" standards.  As set forth below, in light of the significant

8    confidentiality concerns and because the information sought to be redacted is narrowly tailored,

9    Kraken's requests will not interfere with the public's ability to understand the judicial process or

10   significant public events.  *See Kamakana*, 447 F.3d at 1179.

11         Kraken requests that the Court seal certain highlighted portions of the Declaration of Todd

12   Siemers in Support of Kraken's Opposition ("Siemers Declaration") and highlighted portions of

13   the Opposition that reference the information contained within the Seimers Declaration (together,

14   the "Redacted Materials").[1]  The identified portions of the Redacted Materials, as reflected in the

15   Declaration, describe Kraken's confidential and proprietary business information regarding the

16   innerworkings of Kraken's IT processes and commercial data regarding its users and their

17   transactions.  More specifically, the Redacted Materials includes information relating to:

18       •  Kraken's data and information storage systems, practices, and protocols, including

19           information relating to the types of user data stored internally by Kraken, where and

20           how that information is stored, and types and storage of transactional data generated;

21       •  Internal metrics as to Kraken clients based on certain threshold values of transaction

22           history and transaction type; and

23       •  Kraken's IT department functionality and analytical capabilities.

24   *See* Declaration of Grant P. Fondo in Support of Administrative Motion to File Under Seal Portions

25   of Kraken's Opposition to Petition to Enforce Internal Revenue Service Summons and Supporting

26   Declaration ("Fondo Decl.") ¶¶ 2-3.  Kraken's internal metrics as to clients and transactions

27

28   _____

[1] The unredacted versions of these documents are being filed as exhibits concurrently herewith with highlighting to demonstrated the portions sought to be sealed.

PAYWARD VENTURES, INC.'S ADMINISTRATIVE
MOTION TO FILE UNDER SEAL                Case No. 3:23-MC-80029-JCS

pertaining to those clients are confidential, and certain types of information regarding its internal data storage practices, protocols, and systems, and internal IT functionality and analytical capabilities like those identified in the Redacted Materials are not shared publicly. *Id.* ¶ 4.

If such Redacted Materials were publicly disclosed, it would harm Kraken's business interests and competitive standing. *Id.* ¶ 5. Public disclosure of confidential business information detailing the innerworkings of Kraken's data storage system, particularly as they concern the storage of user information and transactional data, and IT functionality and capabilities could substantially harm Kraken and its users, given the nature of that information, by providing potential cyberattackers insight into its data storage practices and protocols. *Cf., e.g.*, *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2017 WL 9614789, at *2 (N.D. Cal. Aug. 25, 2017) ("The Court agrees that if specific information regarding Anthem's cybersecurity practices were disclosed, this could allow cyberattackers greater opportunity to defeat these defenses and substantially harm both Anthem and putative class members."); *U.S. ex rel. Markus v. Aerojet Rocketdyne Holdings, Inc.*, No. 2:15-CV-02245 WBS AC, 2021 WL 4951788, at *2 (E.D. Cal. Oct. 25, 2021) ("[T]he request to seal will be granted as to defendants' motion, defendants' statement, and exhibits reflecting cybersecurity and non-public business information."). This could lead to an increased threat of a cyberattack that puts the security of its accountholders' information at risk. A hack into such systems or phishing attacks on these accounts not only risks potential theft of accountholder information, but also jeopardizes accountholder digital assets. Indeed, these digital assets are likely to be viewed as even more valuable to a potential cybercriminal. Such a cyberattack could result in a theft that could be substantial, leading to potentially significant financial loss to—not to mention an invasion of privacy of—Kraken accountholders. *See, e.g.*, *In re Anthem, Inc. Data Breach Litig.*, 2017 WL 9614789, at *2; *see also, e.g.*, *U.S. ex rel. Markus*, 2021 WL 4951788, at *2 ("Courts have also held that cybersecurity is a compelling reason to seal documents.").

Not only would disclosure of this data storage and IT system information create an increased security risk to Kraken and its accountholders, but it could also harm Kraken's goodwill and competitive standing with its clients in light of that risk—especially if it were to become a reality.

1   *See generally In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008) ("[T]he common-law

2   right of inspection has bowed before the power of a court to insure that its records are not used …

3   as sources of business information that might harm a litigant's competitive standing."); *Nixon*, 435

4   U.S. at 598 ("[S]ources of business information that might harm a litigant's competitive standing

5   [if disclosed]" can give rise to a compelling reason to seal).

6          Moreover, internal metrics as to Kraken clients based on certain threshold values of

7   transaction history and transaction type are confidential and the precise type of commercially

8   sensitive business information this Court should protect.  Public disclosure of this category of

9   proprietary information could be commercially valuable to Kraken's competitors and harm its

10  standing in the industry, as it provides insight into Kraken's userbase at the levels at which they are

11  transacting within the exchange platform.  *See generally, e.g.*, *In re Elec. Arts, Inc.*, 298 F. App'x

12  at 569 (sealing exhibit containing sensitive trade secret information and defining trade secret to

13  mean "any formula, pattern, device or compilation of information which is used in one's business,

14  and which gives him an opportunity to obtain an advantage over competitors who do not know or

15  use it").  Consequently, this category of information too is worthy of sealing.

16         In sum, Kraken's confidentiality interests overcome the right of public access to the record,

17  as a substantial probability exists that the Kraken's overriding confidentiality interests will be

18  prejudiced if portions of the Opposition and Siemers Declaration are not sealed.  In order to balance

19  the right of public access with Kraken's competing confidentiality concerns, Kraken has filed a

20  redacted version of each of the above-referenced documents.  The proposed sealing is narrowly

21  tailored to seal only confidential information regarding the information relating to Kraken's data

22  storage efforts, internal client metrics, and IT system capabilities, and no less restrictive means

23  exist to achieve this overriding interest.  Thus, Kraken has good cause and a compelling reason to

24  keep such information under seal.

25                                        **<u>CONCLUSION</u>**

26         For the foregoing reasons, Kraken respectfully requests the Court grant Kraken's

27  Administrative Motion and issue an order to seal the Redacted Materials and place in the public

28  record the redacted version of the Redacted Materials.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

Dated: April 24, 2023

By: */s/ Grant P. Fondo*
GRANT P. FONDO (SBN 181530)
*GFondo@goodwinlaw.com*
AMANDA H. RUSSO (SBN 319617)
*ARusso@goodwinlaw.com*
**GOODWIN PROCTER** LLP

Attorneys for Respondent
PAYWARD VENTURES, INC., d/b/a
KRAKEN OR KRAKEN.COM