DAVID A. HUBBERT
Deputy Assistant Attorney General

AMY MATCHISON (CA Bar No. 217022)
Trial Attorney
United States Department of Justice, Tax Division
P.O. Box 683, Ben Franklin Station
Washington, D.C. 20044
Telephone:     (202) 307-6422
Fax:                (202) 307-0054
E-mail: Amy.T.Matchison@usdoj.gov
           Western.Taxcivil@usdoj.gov

*Attorneys for United States of America*

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Petitioner, | ) ) ) | Civil Number:  3:23-mc-80029-JCS |
| v. | ) ) | **UNITED STATES' RESPONSE TO PAYWARD VENTURES, INC.'S** |
| PAYWARD VENTURES INC., d/b/a KRAKEN OR KRAKEN.COM, OR ITS PREDECESSORS, SUBSIDIARIES, DIVISIONS, OR AFFILIATES, | ) ) ) ) ) | **ADMINISTRATIVE MOTION TO FILE UNDER SEAL PORTIONS OF ITS OPPOSITION TO PETITION TO ENFORCE INTERNAL REVENUE SERVICE SUMMONS AND** |
| Respondent. | ) ) | **SUPPORTING DECLARATION** |

Payward Ventures, Inc. ("Kraken") has filed an administrative motion to file under seal portions of its opposition and the supporting declaration of Todd Siemers. (ECF No. 17). Kraken's belated motion should be denied.

Because Kraken seeks to seal documents that have already been filed, it does not conform to Local Civil Rule 79-5(b), which clearly contemplates a request to seal documents filed in the first instance with the motion. Kraken filed redacted versions of the two documents on Friday, April 21, 2023, located at Doc. 16 and Doc. 16-4. Unredacted versions were emailed to the government on April 24, 2023, after undersigned counsel contacted counsel for Kraken.

Except for a narrow range of documents that are traditionally secret, this Court begins its sealing analysis with a "strong presumption in favor of access to court records." *Foltz v. State Farm Mut. Auto.*

*Ins. Co.*, 331 F.3d 1122, 1134-35 (9th Cir. 2003).  A stipulation among the parties or a protective order is not sufficient to establish that a document is sealable.  Furthermore, a "compelling reasons" standard applies to most judicial records and a party must demonstrate "good cause."  *See Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006) (a party seeking to seal a judicial record bears the burden of meeting the "compelling reasons" standard); *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135-36 (9th Cir. 2003).  This standard derives from the common law right to inspect and copy public records and documents, including judicial records and documents.  *Kamakana*, 447 F.3d at 1178.  To limit this common law right of access, a party seeking to seal judicial records must show that compelling reasons supported by specific factual findings outweigh the general history of access and the public policies favoring disclosure."  *Id*. at 1178-79.[1]

Kraken argues that its redactions cover information that is "confidential and proprietary business information regarding the innerworkings of Kraken's IT processes and commercial data regarding its users and their transactions."  (ECF No. 17 at 2:15-17).  Disclosure of such, it contends, "could substantially harm Kraken and its users" "by providing potential cyberattackers insight into its data storage practice and protocols."  (*Id*. at 3:8-9).  Also, Kraken speculates that disclosure of the redacted information "could also harm Kraken's goodwill and competitive standing with its clients."  (*Id*. at 3:27-28).  Kraken further alleges, without support or explanation, that there is no "less restrictive means" to protect it.  (*Id.* at 4:22-23)

However, a review of the redacted material reveals that none of what Kraken wants protected is information that should be considered confidential and proprietary business information.  Kraken's motion gives the impression that the redacted information reveals sensitive details of its IT processes and the manner and method of its data storage.  But there is no such detail in the redacted material.  The declaration does not offer the public a roadmap to Kraken's inner workings.  Most people would assume that Kraken maintains a data storage system for the user data it collects and the types of information it collects from its users is publicly available on its site.  Indeed, Kraken's own privacy notice (available on its site) describes how it stores user information:

---

[1] The Department of Justice takes the position that court proceedings should be open and that documents generally should not be filed under seal.  *See* 28 C.F.R. § 50.9.

United States' Response to Administrative
Motion to Seal                                                                 2

> How do we protect personal information?
>
> The Company respects the privacy of any users who access its website, and it is therefore committed to taking all reasonable steps to safeguard any existing or prospective clients, applicants and website visitors.
>
> The Company keeps any personal data of its clients and its potential clients in accordance with the applicable privacy and data protection laws and regulations.
>
> We have the necessary and appropriate technical and organisational measures and procedures in place to ensure that your information remains secure at all times. We regularly train and raise awareness for all our employees to the importance of maintaining, safeguarding and respecting your personal information and privacy. We regard breaches of individuals' privacy very seriously and will impose appropriate disciplinary measures, including dismissal from employment. We have also appointed a Group Data Protection Officer, to ensure that our Company manages and processes your personal information in compliance with the applicable privacy and data protection laws and regulations, and in accordance with this Privacy Notice.
>
> The personal information that you provide us with when applying to open an account, applying for a role within the Company, or when using our website, is classified as registered information, which is protected in several ways. You can access your registered information after logging in to your account by entering your username and the password that you have selected. It is your responsibility to make sure that your password is only known to you and not disclosed to anyone else. Registered information is securely stored in a safe location, and only authorised personnel have access to it via a username and password. All personal information is transferred to the Company over a secure connection, and thus all reasonable measures are taken to prevent unauthorised parties from viewing any such information. Personal information provided to the Company that does not classify as registered information is also kept in a safe environment and accessible by authorised personnel only through username and password.

Privacy Notice (kraken.com) [ https://perma.cc/WL8E-H8WU ].  And, Kraken even makes explicit all the types of user information it collects and stores:

> Information we may collect about you
>
> In order to open an account with us, you must first complete and submit a "create account" form to us by completing the required information. By completing this form, you are requested to disclose personal information in order to enable the Company to assess your application and comply with the relevant laws (including their regulations).
>
> The information that we collect from you is as follows:
>
> Full name, residential address and contact details (e.g. email address, telephone number, fax etc.);

- Date of birth, place of birth, gender, citizenship;

- Bank account information, credit card details, including details about your source of funds, assets and liabilities, and OFAC information;

- Trading account balances, trading activity, your inquiries and our responses;

- Information on whether you hold a prominent public function (PEP);

- Verification information, which includes information necessary to verify your identity such as a passport, driver's licence or Government-issued identity card);

- Other Personal Information or commercial and/or identification information – Whatever information we, in our sole discretion, deem necessary to comply with our legal obligations under various anti-money laundering (AML) obligations, such as under the European Union's 4th AML Directive and the U.S. Bank Secrecy Act (BSA).

Information we collect about you automatically.

- Browser Information – Information that is automatically collected via analytics systems providers from your browser, including your IP address and/or domain name and any external page that referred you to us, your login information, browser type and version, time zone setting, browser plug-in types and versions, operating system, and platform;

- Log Information – Information that is generated by your use of Kraken Exchange Services that is automatically collected and stored in our server logs. This may include, but is not limited to, device-specific information, location information, system activity and any internal and external information related to pages that you visit, including the full Uniform Resource Locators (URL) clickstream to, through and from our Website or App (including date and time; page response times, download errors, length of visits to certain pages, page interaction information (such as scrolling, clicks, and mouse-overs), and methods used to browse away from the page;

Information we receive about you from other sources.

We obtain information about you in a number of ways through your use of our services, including through any of our websites, the account opening process, webinar sign-up forms, event subscribing, news and updates subscribing, and from information provided in the course of on-going support service communications. We also receive information about you from third parties such as your payment providers and through publicly available sources. For example:

- The banks you use to transfer money to us will provide us with your basic personal information, such as your name and address, as well as your financial information such as your bank account details;

- Your business partners may provide us with your name and address, as well as financial information;

> Advertising networks, analytics providers and search information providers may provide us with anonymized or de-identified information about you, such as confirming how you found our website;
>
> Credit reference agencies do not provide us with any personal information about you, but may be used to corroborate the information you have provided to us.

*Id.* If the declaration of Todd Siemers contained explicit detail about the coding for storage used, its location, its name, the name of any service provider, or the specific type of security involved in protecting the data then maybe a concern would be justified. It does not. Instead, it conveys much of the same information that any person with access to the internet could discover.

Kraken argues that disclosure of the information *may* make it vulnerable to cyberattack or *may* cause it to lose goodwill or competitive standing. These are not injuries. This is pure speculation. And it is not even well-founded speculation. Indeed, it is difficult to imagine that the general description of Kraken's data storage contained in the redacted information, much of which is already available online, will make it easier for a cyberattacker to gain access to Kraken's systems.

Moreover, the redacted information about Kraken's users is very general and it's not clear how the fact that Kraken has users transacting on its platform would harm its goodwill or competitive standing. Indeed, Kraken boasts on its own website its 9 million plus clients, supported in 190 plus countries, with a quarterly trading volume of $207 billion (https://www.kraken.com/ [https://perma.cc/J2Y3-FLWJ]). Kraken shouldn't be permitted to trumpet its user base when it's presumably good for business and then try to shield basic details about that same information from the public when it comes to court. Here, there is a presumption in favor of open and public court proceedings and Kraken has not overcome that presumption by showing that its individual interest in confidentiality outweighs the public's right to access and duty of the courts. And even if Kraken could make this showing, it has not established why a less restrictive alternative would not accomplish the same aim while still allowing the public the access to which it is entitled.

For the foregoing reasons, the Court should deny the administrative motion to seal, and Kraken's redacted documents should be stricken from the docket and refiled unredacted.

Dated this 27th day of April, 2023.

        DAVID A. HUBBERT
        Deputy Assistant Attorney General

        */s/ Amy Matchison*
        AMY MATCHISON
        Trial Attorney, Tax Division
        U.S. Department of Justice