DAVID A. HUBBERT
Deputy Assistant Attorney General

AMY MATCHISON (CA Bar No. 217022)
Trial Attorney
United States Department of Justice, Tax Division
P.O. Box 683, Ben Franklin Station
Washington, D.C. 20044
Telephone:      (202) 307-6422
Fax:                (202) 307-0054
Email: Amy.T.Matchison@usdoj.gov
           Western.Taxcivil@usdoj.gov

*Attorneys for United States of America*

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) Civil Number:  3:23-mc-80029-JCS |
| Petitioner, | ) |
| | ) |
| v. | ) **UNITED STATES' RESPONSE TO** |
| | ) **PAYWARD VENTURES INC.'S** |
| PAYWARD VENTURES INC., d/b/a | ) **OPPOSITION TO PETITION TO** |
| KRAKEN OR KRAKEN.COM, OR ITS | ) **ENFORCE INTERNAL REVENUE** |
| PREDECESSORS, SUBSIDIARIES, | ) **SERVICE SUMMONS** |
| DIVISIONS, OR AFFILIATES, | ) |
| | ) |
| Respondent. | ) |
| | ) |

# TABLE OF CONTENTS

**Page(s)**

I. The Summons to Kraken Should be Enforced ........................................................................ 1

   A.  The Court's Authority is Not Limited by How the Summons was Enforced in *Coinbase* ............. 1

   B.  The Summons to Kraken Was Issued for a Legitimate Purpose ........................................ 4

   C.  The Summoned Information is Relevant to the IRS's Investigation ................................. 4

      1.  Class definition ................................................................................................ 5

      2.  Request Number 1 ............................................................................................ 7

      3.  Request Number 2 ............................................................................................ 9

      4.  Request Number 3 ............................................................................................ 10

      5.  Request Number 4 ............................................................................................ 10

      6.  Request Number 5 ............................................................................................ 11

   D.  The Summons to Kraken is Not Overbroad .................................................................. 12

   E.  The Summons to Kraken is Not Unduly Burdensome .................................................... 12

II.  Conclusion ................................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Fortney v. United States*, 59 F.3d 117 (9th Cir. 1995).................................................................1

*In re Tax Liabilities of John Does*, 688 F.2d 144 (2d Cir. 1982)..............................................6

*In re Tax Liabs. of John Does v. United States*, 866 F.2d 1015 (8th Cir. 1989)....................12, 13

*Spell v. United States*, 907 F.2d 36 (4th Cir. 1990) ...................................................................13

*Standing Akimbo, LLC v. United States*, No. CV17MC00169, 2018 WL 6791071 (D. Colo. Dec. 10, 2018), *aff'd*, 955 F.3d 1146 (10th Cir. 2020).....................................13

*Sugarloaf Funding, LLC v. U.S. Dep't of the Treasury*, 584 F.3d 340 (1st Cir. 2009) ................12

*Tiffany Fine Arts, Inc. v. United States*, 469 U.S. 310 (1985) ....................................................5, 9

*United States v. Abrahams*, 905 F.2d 1276 (9th Cir. 1990)......................................................12, 13

*United States v. Arthur Young & Co.*, 465 U.S. 805 (1984).....................................................4, 5, 11

*United States v. Berney*, 713 F.2d 568 (10th Cir. 1983) ...........................................................13

*United States v. Cmty. Fed. Sav. & Loan Ass'n*, 661 F.2d 694 (8th Cir. 1981)........................12

*United States v. Coinbase*, No. 17-cv-01431-JSC, 2017 WL 5890052 (N.D. Cal. Nov. 28, 2017) ...................................................................................................................... *passim*

*United States v. Davey*, 543 F.2d 996 (2d Cir. 1976) ................................................................12

*United States v. Euge*, 444 U.S. 707 (1980) ..........................................................................4, 12

*United States v. Jose*, 131 F.3d 1325 (9th Cir. 1997) .............................................................1, 12

*United States v. Judicial Watch*, 371 F.3d 824 (D.C. Cir. 2004)..............................................13

*United States v. Linsteadt*, 724 F.2d 480 (5th Cir. 1984) ........................................................12

*United States v. Luther*, 481 F.2d 429 (9th Cir. 1973)...............................................................13

*United States v. Monumental Life Ins. Co.*, 440 F.3d 729 (6th Cir. 2006) ...................................8

*United States v. Powell*, 379 U.S. 48 (1964) ....................................................................1, 3, 5, 9

*United States v. Reis*, 765 F.2d 1094 (11th Cir. 1985) ...........................................................12

*United States v. Ruggeiro*, 425 F.2d 1069 (9th Cir. 1973) ......................................................13

*United States v. Samuels, Kramer and Co.*, 712 F.2d 1342 (9th Cir. 1983)..........................3, 6

*United States v. Southwestern Bank & Tr. Co.*, 693 F.2d 994 (10th Cir. 1982)..........................13

*Zietzke v. United States*, No. 19-cv-03761, 2020 WL 264394 (N.D. Cal. Jan. 17, 2020) ...............8

**Statutes**

26 U.S.C. § 6201 .................................................................................................................4

26 U.S.C. § 7601 .................................................................................................................4

26 U.S.C. § 7602 (a), (b) ....................................................................................................4

26 U.S.C. § 7609(f) .........................................................................................................3, 6

26 U.S.C. § 7610 ...............................................................................................................13

**Other Authorities**

26 C.F.R. 301.7610-1 .......................................................................................................13

31 C.F.R. § 1010.4100(e)(1)(i) and § 1022.400 ...............................................................12

H.R. Rep. No. 116-39, 116th Cong. 1st Sess. (April 9, 2019).............................................3

The IRS is conducting an investigation to identify U.S. taxpayers who have used cryptocurrency to determine whether they have complied with the internal revenue laws. In furtherance of that investigation, this Court approved the service of a summons to Payward Ventures, Inc, d/b/a Kraken. Kraken has refused to comply with that summons and now opposes enforcement. Because the United States has established all the elements required for enforcement, the summons should be enforced.

## I. THE SUMMONS TO KRAKEN SHOULD BE ENFORCED

The United States has met its burden of establishing good faith in issuing the summons to Kraken. The Court found that the United States has made the requisite prima facie showing to obtain enforcement of the summons at issue by establishing that the factors enunciated in *United States v. Powell*, 379 U.S. 48, 57-58 (1964), have been met. *See* Order to Show Cause (ECF No. 7).[1] The Court also noted that the burden has shifted to Kraken to show cause why the summons should not be enforced. *Id*. Once the government makes its prima facie case for enforcement through submission of the Revenue Agent's declaration, as has been done here, a "heavy" burden is placed on the respondent to defeat enforcement by showing an "abuse of process" or "the lack of institutional good faith." *Fortney v. United States*, 59 F.3d 117, 119 (9th Cir. 1995). A respondent, however, "'may challenge [a] summons on any appropriate grounds,' including failure to satisfy the Powell requirements or abuse of the court's process."[2] *United States v. Jose*, 131 F.3d 1325, 1328 (9th Cir. 1997).

### A. The Court's Authority is Not Limited by How the Summons was Enforced in *Coinbase*

In *Coinbase*, the court partially enforced a narrowed John Doe summons, but found that some categories of information, like some of those summoned here, were not relevant under *Powell*. *United States v. Coinbase*, No. 17-cv-01431-JSC, 2017 WL 5890052, (N.D. Cal. Nov. 28, 2017). The court reasoned that the IRS should first review basic user information and transaction histories before determining whether further summonses—either to the cryptocurrency exchange or to individual

---

[1] To show that a summons is valid and proper, the United States must establish that the summons: (1) was issued for a legitimate purpose; (2) seeks information relevant to that purpose; (3) seeks information that is not already within the IRS's possession; and (4) satisfies all administrative steps required by the United States Code. *See Powell*, 379 U.S. at 57-58.

[2] In response to the United States' petition, Kraken has not challenged whether the information sought is already in the possession of the IRS or whether the IRS followed the administrative steps required by the Internal Revenue Code for the issuance and service of the summons. Accordingly, the third and fourth prongs of *Powell* are satisfied.

1

users—were necessary." *Coinbase*, 2017 WL 5890052 at *6-7. In effect, the court in *Coinbase* created a novel summons process by which the IRS had to pursue its investigation in phases because it limited the information the IRS could initially receive. Even though Kraken acknowledges in a footnote that this Court is not bound by the decision in *Coinbase* (Kraken's Opposition, ECF No. 16 at 4, n.2), Kraken returns again and again to what the court in *Coinbase* did or did not do and its unprecedented two-step process. In effect, Kraken asks this Court to limit its enforcement authority to what was ordered in *Coinbase*. But there is nothing in the expansive John Doe summons body of caselaw that supports Kraken's argument that the Court can (or should) only enforce a summons that is identical to the one enforced in *Coinbase*. And, even if the *Coinbase* decision were binding on this Court, it would need to consider that changing circumstances since then and the IRS's experience in the Coinbase investigation, might require a different result.

John Doe summons class definitions take many different forms, depending on the legitimate needs of the investigation. For example, in connection with the IRS's Offshore Credit Card Project and other initiatives, the IRS issued and served (after obtaining district court approval) 202 John Doe summonses. Second Declaration of Karen Cincotta in Support of Petition to Enforce, ¶¶ 5, 6-59. These John Doe summonses went to American Express, MasterCard, and VISA, as well as banks, service providers, and other merchants such as airlines, hotel chains, rental car companies, retail stores, shipping companies, and third-party processors. *Id*. And although all but two of the 202 summoned parties complied without the need for enforcement actions, each summons differed in class definition and requests depending on the needs of the investigation and to reflect what the IRS had learned from each previous summons and production of information.[3] *Id.* And this is as it should be. Not only is there no legal reason to require the IRS to issue the same summons to any cryptocurrency exchange (or any other summons recipient), as a practical matter it doesn't make any sense. Coinbase and Kraken are different businesses. They have different platforms, different systems, different user bases, and different user requirements. The years summoned from Coinbase (2013-2015) are different than those covered by the summons to Kraken (2016-2020). The cryptocurrency market has changed in scope and scale since the

---

[3] More recently, the IRS has issued and served three John Doe summonses in furtherance of its investigation into U.S. taxpayers that have used cryptocurrency. Second Cincotta Decl. ¶ 64-66.

summons to Coinbase was served in 2016 seeking information for 2013-2015. It makes sense the summonses differ. The IRS should not only be allowed to consider all those things but should be encouraged to do so.

Moreover, the United States does not believe that the phased, limited-information-review approach imposed in *Coinbase* is what *Powell* or the statute requires. Indeed, if Congress had believed that the IRS should be initially limited to getting only the most basic identifying information when it uses a John Doe summons, it would have legislated accordingly. In fact, after *Coinbase,* Congress did amend the John Doe summons statute to add a new requirement. That requirement, that a John Doe summons be "narrowly tailored to information that pertains to the failure (or potential failure) of the [John Doe class] to comply with one or more provisions of the internal revenue law," was added to 26 U.S.C. 7609(f) to ensure that "the information sought in the summons [is] at least potentially relevant to the tax liability of an ascertainable group." H.R. Rep. No. 116-39, 116th Cong. 1st Sess. at 41 (April 9, 2019). In adding this requirement, Congress wanted to clarify that the information sought in a John Doe summons had to be "at least potentially relevant to the tax liability of the [John Doe class]." H.R. Rep. No. 116-39, at 40-42. Yet Congress reiterated that the new requirement was not intended to change the well-established enforcement standard in *Powell* or change the IRS's burden of proof. *Id.* Despite having the opportunity to do so, Congress did not adopt the two-step investigative approach imposed by the court in *Coinbase* and neither should this Court.

In approving service of the John Doe summons, this Court found that it relates to the investigation of an ascertainable group or class, that there is a reasonable basis for believing that U.S. persons who conducted such transactions failed or may have failed to report income to the IRS, and that the information sought is not readily available to the IRS from other sources. Finally, the Court found that the summons is narrowly tailored to information that pertains to the failure (or potential failure) of the class to comply with internal revenue laws. Kraken cannot now challenge these determinations. *United States v. Samuels, Kramer and Co.*, 712 F.2d 1342, 1346 (9th Cir. 1983) ("the three factual determinations that a district court must make under section 7609(f) before issuing its ex parte authorization of a John Doe summons may not be challenged."). Even so, this is exactly what Kraken attempts to do with its frequent objections to the breadth of the summons throughout its opposition.

**B.     The Summons to Kraken Was Issued for a Legitimate Purpose**

Congress has conferred upon the IRS the duty to make inquiries, determinations, and assessments of all taxes, and has correspondingly given it expansive information gathering authority, including the power to compel disclosure, for that purpose. 26 U.S.C. §§ 6201, 7601(a),7602. The summons power granted to the IRS under § 7602 is the centerpiece of that authority. That power is broad and is designed to enable the IRS to conduct effective tax investigations. *See United States v. Arthur Young & Co.*, 465 U.S. 805, 816 (1984). That statute authorizes the IRS to examine records, issue summonses, and take testimony for the purpose of "ascertaining the correctness of any return," "making a return where none has been made," "determining the liability of any person for any internal revenue tax," or "inquiring into any offense connected with the administration or enforcement of the internal revenue laws." 26 U.S.C. § 7602 (a), (b); *see United States v. Euge*, 444 U.S. 707, 710-11 (1980).[4] The IRS is conducting an investigation to determine the identity and correct federal income tax liability of U.S. persons who conducted transactions in cryptocurrency during 2016-2020.[5] Declaration of Karen Cincotta in Support of Petition to Enforce, ECF No. 1-1, ¶ 2. The John Doe summons to Kraken was issued and served in furtherance of this investigation. *Id.* ¶¶ 4-5. It is the statutory mandate of the IRS to make inquiries into the tax liability of all persons who may be liable to pay any internal revenue tax. 26 U.S.C. § 7601. This is a proper purpose for a summons.

**C.     The Summoned Information is Relevant to the IRS's Investigation**

The United States must establish that the information it seeks is relevant to the IRS's investigation of U.S. taxpayers who transacted in cryptocurrency between 2016-2020. Section 7602 authorizes the IRS to examine "any books, papers, records, or other data which may be relevant or material." In *Arthur Young & Co.*, 465 U.S. at 814, the Court stated that the language "may be" reflects Congress's express intention to allow the IRS to obtain "items of even *potential* relevance to an ongoing investigation, without reference to its admissibility." The IRS need not show that the "documents it

---

[4] Kraken asserts that "Section 7602 allows the IRS to either go a mile wide or an inch deep (collecting basic information on many users), or an inch wide and a mile deep (collecting lots of information about a small subset of users)." Opp. at 1:28-2:2. Nothing resembling that language appears in the statute and Kraken cites no authority that has interpreted the statute to have that meaning nor is the United States aware of any such authority.

[5] The IRS's investigation is not limited to Kraken users and the John Doe summons is just one tool available to the IRS in its investigation.

seeks are actually relevant in any technical, evidentiary sense." *Id.* In *Powell*, the Supreme Court noted that the IRS can issue a summons to investigate "'merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.'" 379 U.S. at 57. Thus, in applying the *Powell* test, the question is not whether the records sought, when disclosed, will contradict a taxpayer's return, but whether the records "might" throw light upon the correctness of a return. *Arthur Young*, 465 U.S. at 814-15 & n.11. The IRS need not accept the word of the summoned party that records are not relevant. It is entitled to determine that fact for itself. *See Tiffany Fine Arts, Inc. v. United States*, 469 U.S. 310, 323 (1985).

                1.     Class definition

        Kraken argues that the Court can only enforce the summons if it changes the John Doe class to match the class enforced in *Coinbase*. In *Coinbase*, after discussions between the parties, the United States narrowed its John Doe class definition to be users with $20,000 in transactions in any one category (buy, send, sell, receive) in any one year during the 2013-2015 period. *Coinbase*, No. 17-cv-01431-JSC, ECF No. 65 at 3. That definition was narrowed after the IRS learned from Coinbase that most of its users engaged in low volume, low dollar transactions. *Id.*, ECF No. 65-3, ¶¶ 13-14. To be clear, that definition was not narrowed by the court, nor was it challenged by Coinbase.

        For this John Doe summons, the IRS has defined the John Doe class as users with $20,000 in total transactions in any one year during the 2016-2020 period. In selecting this John Doe class definition, the IRS considered the needs of its investigation, what it learned from the summons response in *Coinbase*, the change in the cryptocurrency market over time, and how Kraken differs from Coinbase even though both are cryptocurrency exchanges. *See* Second Cincotta Decl. ¶¶ 72-94.[6] Aside from these

---

[6] After Kraken was served with the summons, the IRS and Kraken began discussions about its possible compliance. During those discussions, Kraken represented that the number of its user accounts that would be in the John Doe class as the IRS has defined it was 14,924. Second Cincotta Decl.¶ 67. Even so, Kraken was unwilling to produce information for that level of user and instead offered to produce information for user accounts that transacted at or above a $100,000 threshold. Using that definition, information for only 2,935 user accounts would be produced. *Id.* Now, Kraken represents that the number of its user accounts that would be in the class as the IRS has defined it would be 59,351. Declaration of Todd Siemers, ECF No. 16-4, ¶ 10. Even though the IRS repeatedly asked Kraken to identify the number of user accounts that would be captured using the same class definition used in Coinbase, and despite it agreeing to provide that number, Kraken never did. Second Cincotta Decl. ¶ 68. Now, Kraken represents that 42,017 user accounts would be captured if the definition from *Coinbase* is used. Siemers Decl. ¶¶ 11-12.

practical reasons however, as discussed, there is no legal reason why the IRS should be made to use the same John Doe class definition for every cryptocurrency John Doe summons it issues.

Kraken also objects that the John Doe class definition does not include a carve-out for users who "bought and held"[7] over the course of the summoned period, arguing that those users were carved out from the *Coinbase* class and represent users who would not have a taxable event.[8] Opp. at 8. However, it isn't true that users that "bought and held" during the summoned period wouldn't have a taxable event. For example, the payment of wages in cryptocurrency, a hard-fork, and a chainsplit all fall into this category and would appear like a "buy and hold" in a user's account but are taxable events. Second Cincotta Decl. ¶¶ 88-91. Moreover, to determine basis, the IRS needs "buy" information even if cryptocurrency isn't sold within the same year.[9] *Id.* at ¶¶ 92-94; Cincotta Decl. ¶ 23.

Kraken also accuses the IRS of engaging in a fishing expedition in violation of 26 U.S.C. § 7609(f) and cites to *In re Tax Liabilities of John Does*, 688 F.2d 144, 149 (2d Cir. 1982). That case involved the Second Circuit's consideration of whether a summoned party can challenge the three factual determinations that a district court must make under section 7609(f) *before* issuing its ex parte authorization of a John Doe summons. *Id.* at 145-46. Like the Ninth Circuit, it concluded it cannot. *Samuels, Kramer and Co.*, 712 F.2d at 1346. Moreover, the prior restraint on the IRS's power to serve a John Doe summons to preclude fishing expeditions that Kraken highlights in its parenthetical refers to the court's ex parte determination. Not only can that determination not be challenged here, but in

---

[7] This means users who came into possession of cryptocurrency during the summoned period but did not exchange, sell, use, or otherwise transfer it away.

[8] Kraken also misleadingly asserts that the $20,000 threshold used in Coinbase "already pushed that summons to its limits" and cites to the court's order. Opp. at 8:16-18. However, a full read of the court's order in *Coinbase* makes clear that the class definition wasn't challenged.

[9] The John Doe class is defined as users with $20,000 in total transactions in any one year during 2016-2020. Even so, Kraken hypothesizes that users who transact in small amounts "might be swept up" by the IRS's class definition Opp. at 8:16-25. But there is no de minimis exception in the law when reporting gains or losses from cryptocurrency transactions. And the United States hardly considers a user who buys $10,000 in bitcoin, sells $5,000 of that bitcoin to buy $5,000 of ether to be a small user that should benefit from a de minimis exception. Also, the sale of the $5,000 in bitcoin would generate either a gain or loss to that user that should be reported and determining the tax implications would require knowledge of the user's basis from the initial $10,000 purchase. In addition, the basis that user would have in the $5,000 of purchased ether would be important for the IRS to know to determine the tax consequences of its future disposition.

granting leave to serve the summons to Kraken in the first place, this Court has already prevented a fishing expedition.

Finally, Kraken objects that as the IRS has defined the class non-U.S. persons might be included and that the request is therefore not narrowly tailored.[10] Opp. at 9-10. First, as discussed above, whether the request is narrowly tailored cannot be challenged on enforcement. Second, the IRS defined the user class and requested the information it did precisely so it could best determine whether users are U.S. persons for tax purposes. What Kraken doesn't say, but must admit, is that it has no way to determine which of its users are U.S. persons liable for federal income tax. It does not ask its users. And why should it? It doesn't matter for its business model to be successful. But the IRS must determine whether the class members are U.S. persons subject to the internal revenue laws and so it must have some way of making that determination. The user information sought is specifically for that purpose. So, while it may be true that a U.S. based address may not be perfectly indicative of a U.S. person for tax purposes, it is one indication and a starting point. The same can be said for telephone numbers and banking information. Although not exclusive, some email internet domains may refer to a foreign country. In those cases, it could alert the IRS that they may need to investigate further whether that user is a U.S. person for tax purposes. The same can be said for IP address. The way the IRS has defined user in the summons could not be more relevant to the determinations it must make.

2.      Request Number 1

Kraken objects that the request for historical user information, IP addresses, and payment information seeks irrelevant information. Opp. at 13-15. In part Kraken's objection is based on the lack of time limitation for this request as well as its derisive description of this information, beyond that of basic identity information, as "nice to haves." *Id.* But, if at some point a user has changed their name on

---

[10] Kraken also objects that the IRS is seeking "wide swaths of information, which improperly invades the privacy of Kraken's users." Opp. at 10:24-25. Kraken's own privacy notice, posted on its site, makes clear to its users and the public that:  "We may need to use your personal information to comply with any applicable laws and regulations, subpoenas, court orders or other judicial processes, or requirements of any applicable regulatory authority. We do this not only to comply with our legal obligations but because it may also be in our legitimate interest to do so." Privacy Notice (kraken.com) [https://perma.cc/WL8E-H8WU].

Kraken also objects that transferring user information to the IRS increases the risk of loss or theft, citing a Treasury Inspector General for Tax Administration report. Opp. at 11, n. 6. The IRS does not use the Enterprise Case Management System discussed in that report for the storage of John Doe summons information. Second Cincotta Decl.¶ 71.

1   their account, that certainly might throw light upon the correctness of a return. That the IRS cannot

2   know in advance when those changes may have occurred shouldn't be held against it, especially given

3   the relevance of the information.[11]

4        If the IRS has difficulty positively identifying a taxpayer, it can use IP address information to

5   confirm an identity. Cincotta Decl. ¶¶ 111-19. Information necessary to identify a taxpayer certainly

6   might throw light upon the correctness of a return. Again, the IRS cannot know when it may need that IP

7   address information, but it surely may be relevant.

8        The IRS uses information about how a user funds their account, or what payment methods they

9   use, to uncover related taxpayers or nominee situations, along with determining whether that user is in

10   tax compliance. *Id.* ¶¶ 122-23. For example, if bank accounts of one taxpayer are linked to another

11   taxpayer's cryptocurrency exchange account and vice versa, or a taxpayer with minimal reported income

12   has many linked funding sources, or a taxpayer has funding sources that are not in his own name, that

13   taxpayer is more likely to not be complying with the internal revenue laws.[12] *Id.* ¶¶ 120-25. Having this

14   information certainly might throw light upon the correctness of a return.

15        Kraken also attacks Revenue Agent Cincotta's statements that basic identifying information can

16   be insufficient to identify a taxpayer and that it's not uncommon for taxpayers to use aliases, false

17   addresses or post office boxes, fictitious entity names, or other means to disguise their true identities as

18   lacking any factual basis. Opp. at 13:17-22. But in the sentence immediately preceding that one,

19   Revenue Agent Cincotta declares that the statements are in fact based on her experience as a Revenue

20

21   [11] Kraken cites to *Zietzke v. United States*, No. 19-cv-03761, 2020 WL 264394, at *9 (N.D. Cal. Jan. 17, 2020), in support of its argument that summons requests that are unlimited in time and not directly

22   related to the tax years at issue are irrelevant and overbroad. Opp. at 13. Importantly, the court in *Zietzke* found that the IRS could modify its summons request to tie the information requested in prior years to

23   the year under exam. *Id.* Here, the summons requests that are unlimited in time are tied to the years under investigation, even though the IRS cannot more specifically identify the year in which the users

24   may have submitted identity confirming information to Kraken. Because the request is tied to a year under investigation, it is proper. Kraken similarly cites *United States v. Monumental Life Ins. Co.*, 440

25   F.3d 729, 736 (6th Cir. 2006). Opp. at 13. *Monumental* is distinguishable in that the court there found the IRS agent's declaration was not adequate to establish the relevancy of the information sought

26   because it was a "mere assertion of relevance" with nothing more. *Id.* at 736-37. Here, Agent Cincotta has provided a detailed explanation of the relevance of each category of requested information. Cincotta

27   Decl. ¶ 92-147.

28   [12] The IRS's investigation is not limited to Kraken users. The potential receipt of information for alternative taxpayers does not make this request irrelevant.

Agent, (particularly working in the offshore and electronic payments systems area and on other John Doe summonses). Cincotta Decl. ¶ 42. A position she has held since 2005. Second Cincotta Decl. ¶ 1. This is persuasive evidence. And although Kraken is correct that the IRS doesn't know if Kraken's users have supplied false information, Kraken doesn't know either—at least not for the user accounts that are at its Starter or Express levels. Kraken admits it only requires users at the Intermediate and Pro levels to provide identity verification information. Opp. at 13:22-27.

Finally, Kraken argues that because the IRS was able to identify *most* of the Coinbase users from the basic identifying information it received, that it doesn't need more.[13] Opp. at 14. But what a summoned party believes is necessary for an IRS examination is not the standard under *Powell* and its progeny. *Tiffany Fine Arts,* 469 U.S. at 323. Instead, this Court must examine each summons request and determine whether the information sought may be relevant—that is might it throw light on the correctness of a tax return. That is the case for each of these items.

### 3.    Request Number 2

Kraken argues that the IRS's request for three pieces of KYC information—employment, net worth, and source of wealth data for individual user accounts—is irrelevant to potential tax liabilities, going so far as to allege that the IRS has not tried to explain their relevance. Opp. at 18. But that's not true. Revenue Agent Cincotta explains in detail just how the IRS would use that information and why it may be relevant to the IRS's investigation. Cincotta Decl. ¶¶ 126-31. For example, employment information can be matched against a W-2 form to both confirm identity and income level. *Id.* Net worth and source of wealth information can help the IRS understand whether the identified taxpayer has a level of wealth commensurate with his earnings or if there is possibly unreported income at play. *Id.* Certainly, how that information might throw light on the correctness of a tax return is obvious.

Furthermore, even though only Kraken Pro level accounts require the collection of this KYC information, these user accounts may move the largest amount of funds as well as have access to Kraken's "dark pool"—a discrete market where the order books are secret, making it easier to buy or

---

[13] What this argument also neglects is that even if the percentage of users who went unidentified seems small, those 750 Coinbase users realized more than $100 million in gross proceeds from the sale of cryptocurrency during the years covered by the Coinbase John Doe summons. Second Cincotta Decl. ¶ 81. The resulting tax on that amount is an unnecessary and possibly sizeable loss for the U.S. Treasury.

1    sell larger unit volumes. This likely means these Pro level accounts will have experienced a taxable

2    gain.[14] *Id.* ¶¶ 128-29. Having information about the source of wealth for these users might throw light on

3    the correctness of their returns.

4              4.    Request Number 3

5              Kraken objects to the IRS's request for all exception reports produced by its AML system and

6    investigation records in the first instance because it considers the government's voluntary removal of

7    this request from the Coinbase summons to be an admission that this information was not needed for its

8    investigation. Opp. at 19. But that is not an admission the government ever made and has nothing to do

9    with the question for this Court which is whether Kraken's AML-triggered investigation records may be

10   relevant to the IRS's investigation. As Revenue Agent Cincotta explains, exception reports (or triggers

11   as Kraken calls them (Siemers Decl. ¶¶ 27-28)) identify questionable events engaged in by a user that

12   warrant additional research and investigation by Kraken. Cincotta Decl. ¶ 133. In wanting to review

13   these records (that were created before the summons was issued in its investigation) the IRS isn't

14   looking to conscript Kraken into its service but quite reasonably wants to know if there were any red

15   flags Kraken identified in its own user base.[15] It seems safe to assume that the information contained in

16   these records may at least be potentially relevant to the IRS's investigation.

17             5.    Request Number 4

18             Kraken reads the request for all records of user account activity to be unbounded in time. Opp. at

19   22. To be explicit, the IRS is only seeking records of user account activity for the summoned period:

20   2016-2020. Second Cincotta Decl. ¶ 99. Kraken also objects that the request for transaction hash (ID)

21

22   [14] The IRS acknowledged that Kraken only collects this KYC information for its Pro level accounts.
     Cincotta Decl. ¶ 128. Kraken argues that this fact somehow undermines the relevance of the information
23   it seeks. Opp. at 18, n.10. But just because the IRS recognizes the impossibility of getting this
     information for all Kraken user accounts doesn't mean it's not relevant or it wouldn't need it for all
24   Kraken user accounts. Rather, the IRS recognizes the futility in requesting information it knows Kraken
     doesn't collect. The IRS shouldn't be punished for that.

25   And Kraken objects that this request isn't limited in time. However, the IRS can't possibly know when
     in time Kraken collected this information from each user.

26   [15] Contrary to what Kraken claims, the request for AML exception reports and investigative records is
     not a disguised request for user correspondence. Second Cincotta Decl. ¶ 101.

27   In addition, and like the request for KYC information, Kraken objects that this request isn't limited in
     time. But the IRS can't possibly know when Kraken's AML system generated a trigger, or it
28   investigated a user.

and blockchain addresses is irrelevant, in part because transaction hash information was not sought in *Coinbase*. Opp. at 22. But this is because the IRS's understanding of cryptocurrency is evolving and as it develops greater expertise in how to effectively trace transactions on the blockchain its requests for information have evolved too. Second Cincotta Decl. ¶¶ 95-98. And this is why the transaction hash information and blockchain addresses are relevant, because with that information the IRS can better trace transactions on the blockchain to more accurately determine taxpayer compliance. *Id.* Kraken also objects to this request because it claims to produce this information would require it to develop new searching tools and that it is currently in the process of backfilling transaction hashes and blockchain addresses into its transaction data. Opp. at 23. Kraken warns it would not be able to provide this data for at least several months. *Id.* The IRS is willing to wait.

Kraken states that although it does capture transactions that are a result of chainsplitting, as called for by this request, its records do not identify these transactions as such but instead are reflected as deposits, transfers, or adjustments. Siemers Decl. ¶ 30. Because the IRS is not asking Kraken to create any information in response to the summons, production of the raw transaction information is sufficient.

6.      Request Number 5

Kraken has also read the request for records of account funding as unlimited in time. Opp. at 23. To be clear, the IRS is only seeking records of user account funding for the summoned period:  2016-2020. Second Cincotta Decl. ¶ 100. Kraken objects that account funding records are irrelevant and that the IRS is not permitted to seek records simply because it wants to make the "most informed" decision on compliance as possible. Opp. at 24:5. Kraken is again ignoring the Supreme Court's test for relevance. It is whether the records "might" throw light upon the correctness of a return. *Arthur Young*, 465 U.S. at 814-15 & n.11. Certainly, information that Kraken itself characterizes as helping the IRS make the most informed decision on compliance passes the test. *See also* Cincotta Decl. ¶ 147; Second Cincotta Decl. ¶¶ 102-106.

Kraken states that it does not send invoices, billing statements, or receipts to its users. Opp. at 24:15-16. The IRS is not asking Kraken to create any information, so if this information does not exist, then the IRS recognizes it cannot be produced.

### D.    The Summons to Kraken is Not Overbroad

Kraken argues that because the summons calls for the production of approximately 160 million transaction records and other information from 59,351 accounts, it is overbroad and therefore unenforceable. Opp. at 15. But in testing for overbreadth, the question is not whether the summons calls for a large volume of records. Instead, the questions are, first does the summons describe the requested documents in enough detail to inform the summoned party of exactly what is to be produced, *United Abrahams*, 905 F.2d 1276, 1282, 1285 (9th Cir. 1990) (*overruled on other grounds by United States v. Jose*, 131 F.3d 1325, 1329 (9th Cir. 1997), and, second, may the summoned records be relevant to the inquiry? *In re Tax Liabs. of John Does v. United States*, 866 F.2d 1015, 1021 (8th Cir. 1989). Summonses that are definite and finite in scope, and that request only information that may be relevant to the IRS's inquiry, consistently have been enforced against challenges for overbreadth. *See, e.g.*, *Sugarloaf Funding, LLC v. U.S. Dep't of the Treasury*, 584 F.3d 340, 348 (1st Cir. 2009); *United States v. Reis*, 765 F.2d 1094, 1096 n.2 (11th Cir. 1985); *United States v. Linsteadt*, 724 F.2d 480, 483 n.1 (5th Cir. 1984); *United States v. Cmty. Fed. Sav. & Loan Ass'n*, 661 F.2d 694 (8th Cir. 1981). Here, there is no dispute that the summoned documents have been identified sufficiently for Kraken's production. And the documents sought are all relevant to the IRS's investigation. The summons is therefore not overbroad and should be enforced.

### E.    The Summons to Kraken is Not Unduly Burdensome

Kraken objects to enforcement of the summons based on the volume of material it would have to produce—that is, compliance with the summons is allegedly too costly and difficult.[16] Yet enforcement

---

[16] Kraken describes the difficulty of compliance with the summons given how it has set up its systems for recordkeeping. Siemers Decl. ¶¶ 13-33. However, under the FinCEN regulations, Kraken is required to obtain and retain many of the summoned records. *See* 31 C.F.R. § 1010.4100(e)(1)(i) and § 1022.400; *see also* Cincotta Decl. ¶¶ 62-67. Additionally, under the FinCEN regulations, Kraken must be able to retrieve the records it is required to keep ("have the information readily available"). FIN-2016-G001 (Mar. 11, 2016). Failure by Kraken to obtain, retain, and retrieve required records could subject it and its employees to civil and criminal penalties.

Kraken is also not being asked to "develop queries or tools to generate the requested information." Opp. at 17:3-5. Kraken possesses all the requested information and is only being asked to turn it over. Indeed, the cases cited by Kraken contradict its theory. While the IRS could not "require preparation or production of records not yet in existence," it *could* compel the production of computer tapes that contained the taxpayer's financial information. *United States v. Davey*, 543 F.2d 996, 999-1000 (2d Cir. 1976). The case upon which *Davey* relied for the proposition that the IRS could not compel the preparation of documents was overruled by the Supreme Court a few years later. *See Euge*, 444 U.S. at

(continued...)

of a summons seeking relevant records will not be denied just because the summons seeks production of (or a search through) a great many records or will result in significant expenditure of the recordkeeper's time and money. *See, e.g.*, *Abrahams*, 905 F.2d at 1285-860; *United States v. Luther*, 481 F.2d 429, 432-33 (9th Cir. 1973) (the fact that the summoned records were extensive was not material to whether or not the summons should be enforced); *United States v. Ruggeiro*, 425 F.2d 1069, 1070-71 (9th Cir. 1973) (summons for "voluminous" records enforced over objections of breadth and oppression); *United States v*. *Judicial Watch*, 371 F.3d 824, 832 (D.C. Cir. 2004); *Spell v. United States,* 907 F.2d 36, 39 (4th Cir. 1990); *In re Tax Liabs. of John Does*, 866 F.2d at 1021 (rejecting employer's claim that the cost of compliance with summons seeking payroll records was out of proportion to any revenue the IRS might obtain); *United States v. Berney,* 713 F.2d 568, 571-72 (10th Cir. 1983); *United States v. Southwestern Bank & Tr. Co.*, 693 F.2d 994, 996 (10th Cir. 1982) (reversing district court's refusal to enforce fully a summons requiring review of 10 million documents). There is also a general duty on the part of third-party record keepers to respond to an IRS summons and to bear some of the burden of doing so. *See In re Tax Liabs. of John Does*, 866 F.2d at 1022; *Southwestern Bank and Trust Co.*, 693 F.2d at 996.

The production of 160 million transaction records is not out of line with what the IRS receives, or expects to receive, when it issues a John Doe summons. The same can be said for the production of 59,351 user accounts. Second Cincotta Decl. ¶ 63. Moreover, Kraken's costs can be offset by reimbursement or other IRS assistance. *See* 26 U.S.C. § 7610; 26 C.F.R. 301.7610-1.

---

716 (concluding IRS could compel production of handwriting exemplar); *see also Standing Akimbo, LLC v. United States*, No. CV17MC00169, 2018 WL 6791104, at *6 (D. Colo. Aug. 6, 2018), *report and recommendation adopted sub nom. Standing Akimbo, LLC v. United States*, No. CV17MC00169, 2018 WL 6791071 (D. Colo. Dec. 10, 2018), *aff'd*, 955 F.3d 1146 (10th Cir. 2020) (While the IRS cannot force a respondent to create documents, a respondent must still produce all documents and raw data that it does possess). The IRS can develop its own queries or use tools available to it to extract the summoned information from the raw data. Second Cincotta Decl.¶ 70.

1    **II.    CONCLUSION**

2    For these reasons, the summons to Kraken should be enforced in its entirety.

3    Dated this 5th day of May, 2023.

4    DAVID A. HUBBERT
     Deputy Assistant Attorney General

5

6    */s/ Amy Matchison*
     AMY MATCHISON

7    Trial Attorney, Tax Division
     U.S. Department of Justice

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28